Hannah Stone, Esq.
Alyssa L. Probst, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
PO Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
hstone@bigskylawyers.com
aprobst@bigskylawyers.com

and

Megan L. Dishong
Montana Legal Services Association
1535 Liberty Ln, Suite 110D
Missoula, MT 59808
Ph: 406-543-8343
Fax: 406-442-9817
mdishong@mtlsa.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA, BILLINGS DIVISION

| | | |
|---|---|---|
| JAVIER GALLEGOS ARIAS, PEDRO ROSALES ARIAS, JUAN ANGEL CASTELLANOS, and SALVADOR MACIAS CEJAS, | ) ) ) ) ) | Cause No.  CV-21-124-BLG-SPW-TJC |
| Plaintiffs, | ) ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | ) ) ) | |
| OCC-O'CONNOR CROPS AND CATTLE, LLC and O'CONNOR | ) ) | |

Complaint and Demand for Jury Trial                                        Page 1

RANCH LANDS, LLC, TYREE          )
O'CONNOR and SARINA              )
JENSEN,                          )
                                 )
                    Defendants.  )

## I.   INTRODUCTION

1.      Plaintiffs Javier Gallegos Arias, Pedro Rosales Arias, Juan Angel Castellanos, and Salvador Macias Cejas ("Farmworkers") are migrant agricultural workers recruited by Defendants OCC-O'Connor Crops & Cattle, LLC ("OCC") and O'Connor Ranch Lands, LLC ("OCRL") in Mexico to work as ranch hands for the production of cattle and hay crops at various times between April 2016 and June 2020.

2.      Defendants made false promises to the Farmworkers about their wages and living and working conditions to entice them to obtain visas through the federal government's H-2A Temporary Agricultural Worker program and travel to the United States to work for Defendants.

3.      Throughout the Farmworkers' periods of employment, Defendants paid the Farmworkers wages well below those promised in their employment contracts and required by federal and state law. Their housing was provided in violation of applicable federal standards. The Farmworkers were required to work much longer hours than the hours listed in their contracts under grueling conditions, and they often were required to perform duties not listed in their

employment contracts in violation of federal regulations.

## II.   JURISDICTION, AND VENUE

4.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §
216(b) (Fair Labor Standards Act ("FLSA")), and 28 U.S.C. § 1331 (subject matter
jurisdiction).

5.      This Court has supplemental jurisdiction over the Farmworkers' state
law causes of action pursuant to 28 U.S.C. § 1367(a), including common law
claims for breach of contract. These state law claims are so related to the federal
claims that they form part of the same case or controversy.

6.      Venue is proper in this District because a substantial part of the claims
arose within the District of Montana and because the Defendants are located in
Carter County, within the Billings Division.

## III.   PARTIES

7.      Plaintiff farmworkers are citizens of Mexico who were admitted to the
United States on a temporary basis pursuant to the Immigration and Nationality
Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), to perform general farm and ranch work
related to the production of livestock and hay for OCC-O'Connor Crops & Cattle
and/or O'Connor Ranch Lands, LLC. The Farmworkers received temporary visas,
commonly known as "H-2A visas" because of the subsection of the federal statute,
to enter the United States, and were lawfully employed by Defendants under these

Complaint and Demand for Jury Trial                                    Page  3

visas.

8.      Defendant OCC-O'Connor Crops & Cattle ("OCC") is a domestic
limited liability company whose principal place of business is in Ekalaka,
Montana. At all times relevant to this action, OCC was an employer of the
Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d) and 20 C.F.R. §
655.103(b). OCC hired, directed, and supervised the Farmworkers and their daily
work activities, assigned them their tasks on a daily basis, and paid them their
wages for their labor.

9.      Defendant O'Connor Ranch Lands, LLC ("OCRL") is a domestic
limited liability company whose principal place of business is in Ekalaka,
Montana. At all times relevant to this action, OCRL was an employer of the
Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d) and 20 C.F.R. §
655.103(b). OCRL hired the Farmworkers, directed, and supervised their daily
work activities, assigned them their tasks daily, and paid them their wages for their
labor.

10.     Defendant Tyree O'Connor ("O'Connor") is a resident of Carter
County, Montana. He is the owner and managing member of Defendants OCC and
OCRL, and throughout the period relevant to this action, directed and controlled
OCC's and OCRL's activities on a daily basis.

11.     At all times relevant to this action, O'Connor was an employer of the

Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d), the H-2A regulations, and 20 C.F.R. § 655.103(b).

12.    Defendant Sarina Jensen ("Jensen") is a resident of Carter County, Montana. She is the owner and managing member of Defendants OCC and OCRL, and throughout the period relevant to this action, directed and controlled OCC's and OCRL's activities on a daily basis.

13.    At all times relevant to this action, Jensen was an employer of the Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d), the H-2A regulations, and 20 C.F.R. § 655.103(b).

14.    OCC, OCRL, O'Connor and Jensen were joint employers of the Farmworkers and, as such, were contractually bound to the Farmworkers by the terms of their employment contracts.

## IV.    FACTS

### A. The Federal H-2A Visa Program

15.    The H-2A program was created by the Immigration and Nationality Act, 8 U.S.C. § 1188, and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of non-immigrant workers to perform agricultural labor or services of a seasonal or temporary nature.

16.    An agricultural employer in the United States may import foreign

workers to perform labor of a temporary nature if the United States Department of Labor ("DOL") certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100. Foreign workers admitted to the United States in this fashion are commonly referred to as "H-2A workers."

17.    Employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. 20 C.F.R. § 655.121(a)(1). Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F.R. §§ 655.120, 655.122 and 655.135. Among these terms are the following:

    a.    For every hour or portion thereof worked during a pay period, the employer must pay the workers the highest of the adverse effect wage rate (AEWR) (the prevailing wage for the work in the geographic area where the work is to be performed), or the federal minimum wage, or the state minimum wage in effect at the time the work is performed. 20

C.F.R. § 655.120.

b.      The employer must provide housing at no charge to the H-2A workers. All employer-provided housing must meet applicable federal standards. 20 C.F.R. § 655.122(d)(1) and 20 C.F.R. § 654.400(b).

c.      For those workers who complete the first 50 percent of the work contract, the employer must pay for transportation costs from the worker's home to the employer's jobsite not previously reimbursed, as well as daily subsistence en route. 20 C.F.R. § 655.122(h)(1).

d.      For those workers who complete the contract period, the employer must provide or pay for transportation from the worksite to the worker's homes, as well as pay for or provide subsistence en route. 20 C.F.R. § 655.122(h)(2).

e.      The workers must be guaranteed employment for at least three-fourths of the workdays covered by the clearance order, including any extensions, and if this amount of work is not offered, the workers must be paid the amount they would have earned had they been employed for the guaranteed number of days. 20 C.F.R. § 655.122(i).

f.      The employer must keep accurate and adequate records with respect to the workers' earnings, the daily starting and stopping times for work, and deductions from wages. 20 C.F.R. § 655.122(j).

g.    The employer must furnish each worker on payday a written

statement of his hours and earnings containing, *inter alia*, the hours of

work offered, the hours actually worked, and the piece-work units

produced daily by the employee during that pay period. 20 C.F.R. §

655.122(k).

h.    The working conditions must comply with Federal and State

minimum wage laws and health and safety laws. 20 C.F.R. § 655.135(e)

and 20 C.F.R. § 655.122(f).

i.    The employer and its agents must not seek or receive payment

of any kind from the H-2A workers for recruitment costs. 20 C.F.R. §

655.135(j).

18.    The AEWRs for the relevant years are as follows:

a.    2016 (effective December 22, 2015): $11.75
b.    2017 (effective December 23, 2016): $11.66
c.    2018 (effective January 4, 2018): $11.63
d.    2019 (effective January 9, 2019): $13.48
e.    2020 (effective January 2, 2020): $13.62

Upon a new AEWR going into effect that is different than that listed in the

application and clearance order, employers must adjust the contract and rate of pay

accordingly. 20 C.F.R. §§ 655.120, 655.122.

19.    The clearance order also functions as an employment contract

between the agricultural employer and the H-2A workers. 20 C.F.R. § 655.122(q).

Complaint and Demand for Jury Trial                                    Page  8

## B. Defendants' H-2A Certifications

20.     OCC and OCRL, acting through O'Connor and Jensen, requested DOL approval to hire foreign workers in 2016, 2017, 2018, 2019, and 2020.

21.     In or about December 2015, OCC submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. The application sought admission of five workers as general ranch hands in Ekalaka, Montana from March 1, 2016 through December 1, 2016 (ETA case number H-300-15364-722795).    The temporary labor certification application was signed on behalf of OCC by O'Connor.    A true and correct copy of this application is attached as Exhibit A.

22.     In or about March, 2016 the DOL's National Processing Center granted in full OCC's temporary labor certification application seeking five workers for employment as ranch hands. A true and correct copy of the certification is attached as Exhibit B.

23.     In or about November 2016, OCC submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. The application sought admission of five workers as general ranch hands to produce cattle in Ekalaka, Montana from February 10, 2017 through December 10, 2017 (ETA case number H-300-16320-745011). The temporary labor certification application was signed on behalf of

OCC by O'Connor.    A true and correct copy of this application is attached as Exhibit C.

24.    In or about January 2017, the DOL's National Processing Center granted in full OCC's temporary labor certification application seeking five workers for employment as ranch hands. A true and correct copy of the certification is attached as Exhibit D.

25.    In or about November, 2017, OCC submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. The application sought admission of seven workers as general ranch hands in Ekalaka, Montana from February 1, 2018 through December 1, 2018 (ETA case number H-300-17320-020370). The temporary labor certification application was signed on behalf of OCC by O'Connor.    A true and correct copy of this application is attached as Exhibit E.

26.    In or about December 2017, the DOL's National Processing Center granted in full OCC's temporary labor certification application seeking seven workers for employment as ranch hands. A true and correct copy of the certification is attached as Exhibit F.

27.    In or about August, 2018, OCRL submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. The application sought admission of

three workers as feedlot livestock handlers in Ekalaka, Montana from November 1,

2018 through May 1, 2019 (ETA case number H-300-18232-587351). The

temporary labor certification application was signed on behalf of OCRL by Jensen.

A true and correct copy of this application is attached as Exhibit G.

28.    In or about October, 2018, the DOL's National Processing Center

granted in full OCRL's temporary labor certification application seeking three

workers for employment as feedlot cattle handlers. A true and correct copy of the

certification is attached as Exhibit H.

29.    In or about November 2018, OCC submitted a temporary labor

certification application to the Office of Foreign Labor Certification of the DOL's

Employment and Training Administration. The application sought admission of

nine workers as general ranch hands in Ekalaka, Montana from February 1, 2019

through December 1, 2019 (ETA case number H-300-18305-906213). The

temporary labor certification application was signed on behalf of OCC by

O'Connor.    A true and correct copy of this application is attached as Exhibit I.

30.    In or about January 2019, the DOL's National Processing Center

granted in full OCC's temporary labor certification application seeking nine

workers for employment as ranch hands. A true and correct copy of the

certification is attached as Exhibit J.

31.    In or about September 2019, OCRL submitted a temporary labor

Complaint and Demand for Jury Trial                                    Page 11

certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. The application sought admission of three workers as feedlot cattle handlers in Ekalaka, Montana from November 1, 2019 through June 1, 2020 (ETA case number H-300-19247-678994). The temporary labor certification application was signed on behalf of OCRL by Jensen. A true and correct copy of this application is attached as Exhibit K.

32.    In or about October 2019, the DOL's National Processing Center granted in full OCRL's temporary labor certification application seeking three workers for employment as feedlot cattle handlers.

33.    In or about November 2019, OCC submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. The application sought admission of ten workers as ranch hands to produce cattle in Ekalaka, Montana from February 1, 2020 through November 30, 2020 (ETA case number H-300-19324-157625). The temporary labor certification application was signed on behalf of OCC by O'Connor.    A true and correct copy of this application is attached as Exhibit L.

34.    In or about November 2019, the DOL's National Processing Center granted in full OCC's temporary labor certification application seeking ten workers for employment in as ranch hands. A true and correct copy of the certification is attached as Exhibit M.

Complaint and Demand for Jury Trial                                    Page  12

35.     Each of the temporary labor certification applications described in Paragraphs 21 through 34 explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B, including the terms described in Paragraph 17.

36.     As part of the temporary labor certification applications described in Paragraphs 21 through 34, Defendants submitted clearance orders which contained certifications that the orders described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii).

37.     The DOL accepted the temporary labor certification applications and clearance orders submitted by OCC and OCRL as described above.

### C.     The Farmworkers' Recruitment, Travel, and Arrival in Montana

38.     After DOL approved each of the certifications referenced in Paragraphs 21 through 34, U.S. Citizenship and Immigration Services of the Department of Homeland Security ("CIS") in turn issued H-2A visas to fill the manpower needs described in Defendants' temporary labor certification applications and the accompanying clearance orders.

39.     Defendants recruited and hired Javier Gallegos Arias, Pedro Rosales Arias, Salvador Macias Cejas, Juan Angel Castellanos, and other individuals in

Complaint and Demand for Jury Trial                                          Page 13

Mexico to fill the ranch jobs described in Defendants' temporary labor certification applications referenced above.

40.    After being recruited and hired by Defendants, Javier Gallegos Arias, and Pedro Rosales Arias, and Juan Angel Castellenos traveled at their own expense from their homes in the Mexican state of Nayarit to Nogales, Sonora, Mexico, where they were interviewed at the U.S. Consulate and issued H-2A visas.

41.    Salvador Macias Cejas traveled at his own expense from his home in the Mexican state of Baja California to Nogales, Sonora, Mexico where he was interviewed at the U.S. Consulate and issued an H-2A visa on February 11, 2020.

42.    The Farmworkers entered the United States at Nogales, Arizona and traveled to Ekalaka at Defendants' expense. Upon arriving in Ekalaka, the Farmworkers were employed as ranch hands and feedlot cattle handlers pursuant to Defendants' temporary labor certification application described above.

43.    The expenses incurred and paid by the Farmworkers as described in Paragraphs 40-43 were incurred primarily for the benefit or convenience of Defendants within the meaning of the regulations implementing the FLSA, 29 C.F.R. § 531.3(d)(1).

44.    None of the Farmworkers speaks or understands English well. None of the Farmworkers can read English.

**D.    Javier Gallegos Arias's Employment with Defendants**

45.    Javier Gallegos Arias worked for Defendants from February 16 to December 9, 2017, from February 8 to November 30, 2018, and from March 27 to November 30, 2019, as described further below.

46.    Gallegos Arias heard about the work for Defendants from his co-Plaintiff, Pedro Rosales Arias. Rosales Arias told O'Connor that Gallegos Arias was a mechanic and recommended that O'Connor hire him.

47.    Each work season, Gallegos Arias worked with Peak Season Labor over the phone to arrange for his hire, secure his visa, and arrange for travel to the United States.

48.    Each work season, Gallegos Arias began his trip to the United States several days before the date he was required to begin work.

49.    Each year, Gallegos Arias's family would drive him from his hometown to another town called Peñitas which is less than an hour drive. In Peñitas, he would buy his own bus ticket to the border city of Nogales.    The trip from Peñitas to Nogales took approximately 14 hours, and Gallegos Arias incurred expenses in the course of the trip.

50.    Each season, after Gallegos Arias's visa was issued, he would cross into the U.S. at the Nogales border checkpoint. He took a bus, paid for by Defendants, from Nogales to the Phoenix, Airport.

51.    Gallegos Arias would fly from Phoenix to Rapid City, South Dakota,

Complaint and Demand for Jury Trial                                          Page  15

at Defendants' expense.

52.     Jensen would pick up Gallegos Arias in the Rapid City airport and drive him to Defendants' ranch.

53.     On or about February 15, 2017, Gallegos Arias met with an employee of Peak Season Labor. The employee interviewed Gallegos Arias briefly and gave him his work contract. This was the first time Gallegos Arias had seen his work contract. This was the first time he had seen the details of the employment he was about to accept.

54.     Defendants employed Javier Gallegos Arias in Ekalaka from February 16, 2017 until December 9, 2017. The temporary labor certification application described in Paragraphs 23-24 and the accompanying clearance order served as the employment contract between Defendants and Javier Gallegos Arias with respect to his Montana employment. 20 C.F.R. § 655.122(q).

55.     For his work under his H-2A contract in 2017, Javier Gallegos Arias was to be paid the prevailing AEWR of $11.66 per hour and work 60 hours per week, Monday through Saturday, as delineated in the Clearance Order.

56.     Throughout his employment with Defendants in 2017, Gallegos Arias's earnings were less than the applicable AEWR in Montana. At times, Gallegos Arias's earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

Complaint and Demand for Jury Trial                    Page  16

57.     Defendants employed Gallegos Arias in Ekalaka for a second season from February 8, 2018 to November 31, 2018. The temporary labor certification application described in Paragraphs 25-26 and the accompanying clearance order served as the employment contract between Defendants and Javier Gallegos Arias with respect to his Montana employment. 20 C.F.R. § 655.122(q).

58.     For his work under his H-2A contract in 2018, Javier Gallegos Arias was to be paid the prevailing AEWR of $11.63 per hour and work 60 hours per week, Monday through Saturday, as delineated in the Clearance Order.

59.     Throughout his employment with Defendants in 2018, Gallegos Arias's earnings were less than the applicable AEWR in Montana. At times, Gallegos Arias's earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

60.     Defendants employed Gallegos Arias in Ekalaka for a third season from March 27, 2019 to November 31, 2019. The temporary labor certification application described in Paragraphs 29-30 and the accompanying clearance order served as the employment contract between Defendants and Javier Gallegos Arias with respect to his Montana employment. 20 C.F.R. § 655.122(q).

61.     For his work under his H-2A contract in 2019, Javier Gallegos Arias was to be paid the prevailing AEWR of $13.48 per hour and work 60 hours per week, Monday through Saturday, as delineated in the Clearance Order.

62.     Throughout his employment with Defendants in 2019, Gallegos Arias's earnings were less than the applicable $13.48 per hour AEWR in Montana. At times, Gallegos Arias's earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

63.     For all years that Gallegos Arias was employed by Defendants, he completed more than 50% of the work contract, and is entitled to payments for transportation for his employment, pursuant to 20 C.F.R. § 655.122.

### E.     Pedro Rosales Arias's Employment with Defendants

64.     Defendants employed Pedro Rosales Arias in Ekalaka from April 28, 2016 until November 21, 2016. The temporary labor certification application described in Paragraphs 21-22 and the accompanying clearance order served as the employment contract between Defendants and Pedro Rosales Arias with respect to his Montana employment. 20 C.F.R. § 655.122(q).

65.     For his work under his H-2A contract, Pedro Rosales Arias was to be paid the prevailing AEWR of $11.75 per hour and work 60 hours per week, Monday through Saturday, as delineated in the Clearance Order.

66.     Defendants employed Rosales Arias in Ekalaka for a second season from February 12, 2017 until November 6, 2017. The temporary labor certification application described in Paragraphs 23-24 and the accompanying clearance order served as the employment contract between Defendants and Pedro Rosales Arias

Complaint and Demand for Jury Trial                                    Page 18

with respect to his Montana employment. 20 C.F.R. § 655.122(q).

67.     For his work under his H-2A contract, Rosales Arias was to be paid the prevailing AEWR of $11.66 per hour and work 60 hours per week, Monday through Saturday, as delineated in the Clearance Order.

68.     Defendants employed Pedro Rosales Arias in Ekalaka for a third season from March 6, 2019 until November 16, 2019. The temporary labor certification application described in Paragraphs 29-30 and the accompanying clearance order served as the employment contract between Defendants and Pedro Rosales Arias with respect to his Montana employment. 20 C.F.R. § 655.122(q).

69.     For his work under his H-2A contract, Pedro Rosales Arias was to be paid the prevailing AEWR of $13.48 per hour and work 60 hours per week, Monday through Saturday, as delineated in the Clearance Order.

70.     Throughout his employment by Defendants, Rosales' weekly earnings frequently totaled less than the AEWR.   At times, his earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

71.     For all years that Rosales was employed by Defendants, he completed more than 50% of the work contract, and is entitled to payments for transportation for his employment, pursuant to 20 C.F.R. § 655.122.

72.     At times during his employment, Rosales was lodged in housing that

Complaint and Demand for Jury Trial                                    Page  19

did not meet federal standards, including housing that held more workers than approved for the space or housing that did not provide mattresses for the workers.

### F.    Salvador Macias Cejas's Employment with Defendants

73.    Defendants employed Salvador Macias Cejas in Ekalaka from February 13, 2020 until February 28, 2020. The temporary labor certification application described in Paragraphs 33-34 and the accompanying clearance order served as the employment contract between Defendants and Salvador Macias Ceja with respect to his Montana employment. 20 C.F.R. § 655.122(q).

74.    Macias Cejas worked with Peak Season Labor over the phone to arrange for his hire, secure his visa, and arrange for travel to the United States.

75.    On or about February 9, 2020, Macias Cejas began his trip to the United States from his hometown of Ensenada, Baja California.

76.    Macias Ceja took a bus, at his own expense, from Ensenada to Nogales. The trip was approximately 11 hours, and Macias Cejas incurred expenses in the course of the trip.

77.    After arriving in Nogales, Macias Cejas met with an employee of Peak Season Labor. The employee interviewed Macias Cejas briefly and gave him his work contract. This was the first time Macias Cejas had seen his work contract. This was the first time he had seen the details of the employment he was about to accept.

78.    Macias Cejas' contract required that he work 60 hours per week, Monday through Saturday, and be paid $13.62 per hour.

79.    Throughout his employment with Defendants in 2020, Macias Cejas' earnings were less than the applicable $13.62 per hour AEWR in Montana. At times, Macias Cejas' earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

80.    Macias Cejas objected to the wage he was being paid. He met with Defendants to discuss the inadequate pay rate.

81.    In or about February 2020, after Macias Cejas objected to the wage he was being paid, O'Connor told Macias Cejas he would be transferred to a different location on the ranch than the housing where he had been living, and the new housing location did not meet federal standards.

82.    Macias Cejas was alone at the new location, which had dead rodents; non-functional plumbing, running water, and toilet; and freezing conditions, due to a lack of sufficient gas to heat the residence properly.

83.    Due to the poor housing conditions and improper rate of pay, Macias Cejas ended his employment with Defendants on or about February 29, 2020.

### G.    Juan Angel Castellanos's Employment with Defendants

84.    Defendants employed Juan Angel Castellanos in Ekalaka from November 1, 2019 until June 1, 2020. The temporary labor certification application

described in Paragraphs 31-32 and the accompanying clearance order served as the employment contract between Defendants and Juan Angel Castellanos with respect to his Montana employment. 20 C.F.R. § 655.122(q).

85.     For his work under his H-2A contract, Juan Angel Castellanos was to be paid $13.48 per hour initially, as delineated in the Clearance Order, and $13.62 effective January 2, 2020.

86.     Throughout his employment by Defendants, Castellanos' weekly earnings frequently totaled less than the AEWR. At times, his earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

87.     During the time he worked for Defendants, Castellanos objected to being paid less than the hourly rate in his employment contract.   Shortly after this, on or about April 2020 and two months before the end of his contract, the Defendants ended his contract.

88.     For all years that Castellanos was employed by Defendants, he completed more than 50% of the work contract, and is entitled to payments for transportation for his employment, pursuant to 20 C.F.R. § 655.122.

89.     For all of the Farmworkers' employment described above in Paragraphs 46-84, Defendants failed to maintain payroll records accurately recording the compensable hours worked by each of the Farmworkers during the

Complaint and Demand for Jury Trial                                    Page  22

contract term.

90.     For all of the Farmworkers' employment described above in
Paragraphs 46-84, Defendants never gave any of the Farmworkers the written
statements of hours and earnings required by 20 C.F.R. § 655.122(k).

## V.      CLAIMS FOR RELIEF

### Count I – Fair Labor Standards Act

91.     Plaintiffs incorporate all allegations above as though set forth herein.

92.     Defendants violated the minimum wage provisions of the FLSA, 29
U.S.C. § 206(a), by failing to pay the Farmworkers at least $7.25 for every
compensable hour of labor performed in each workweek during which they were
employed.

93.     Defendants violated the compensable time provisions of the FLSA, 29
U.S.C. § 203(g), by failing to pay Farmworkers for all hours the employer suffered
or permitted the Farmworkers to work.

94.     Defendants' violations of FLSA were willful, because Defendants
knew their conduct was in violation of the FLSA or showed a reckless disregard
for whether their conduct was in violation of FLSA.

95.     As a result of Defendants' FLSA minimum wage violations, each of
the Farmworkers is entitled to recover the amount of his unpaid minimum wages,
an equal amount in liquidated damages, and attorney's fees, pursuant to 29 U.S.C.

§ 216(b).

## Count II – Breach of Contract

96.     Plaintiffs incorporate all allegations above as though set forth herein.

97.     Defendants breached their employment contract with Javier Gallegos Arias by providing terms and conditions of employment that were materially different from those promised in the applicable clearance orders, including the following:

      a.     Failing to reimburse Gallegos Arias for the costs he incurred for inbound transportation between his home in Peñitas, Mexico to Nogales, Mexico and his subsistence en route;

      b.     Failing to pay Gallegos Arias wages at least equal to the AEWR for his labor during his employment with Defendants;

      c.     Failing to keep and maintain accurate payroll records regarding Gallegos Arias's employment during his time working for Defendants;

      d.     Failing to provide Gallegos Arias with earnings statements accurately reporting his hours worked;

98.     Defendants breached their employment contract with Pedro Rosales Arias by providing terms and conditions of employment that were materially different from those promised in the applicable clearance orders, including the following:

a.      Failing to pay Rosales Arias wages at least equal to the AEWR for his labor during his employment with Defendants;

b.      Failing to keep and maintain accurate payroll records regarding Rosales Arias's employment during his time working for Defendants;

c.      Failing to provide Rosales Arias with earnings statements accurately reporting his hours worked; and

d.      Failing to provide Rosales Arias housing that met applicable federal standards.

99.      Defendants breached their employment contract with Salvador Macias Cejas by providing terms and conditions of employment that were materially different from those promised in the applicable clearance order, including the following:

a.      Failing to reimburse Macias Cejas for the costs he incurred for inbound transportation between his home in Nayarit, Mexico to Nogales, Mexico and his subsistence en route;

b.      Failing to pay Macias Cejas wages at least equal to the AEWR for his labor during his employment with Defendants;

c.      Failing to keep and maintain accurate payroll records regarding Macias Cejas's employment during his time working for Defendants;

d.      Failing to provide Macias Cejas with earnings statements

accurately reporting his hours worked; and

    e.    Failing to provide Macias Cejas housing that met applicable federal standards.

100.   Defendants breached their employment contract with Juan Angel Castellanos by providing terms and conditions of employment that were materially different from those promised in the applicable clearance order, including the following:

    a.    Failing to pay Castellanos wages at least equal to the AEWR for his labor during his employment with Defendants;

    b.    Failing to keep and maintain accurate payroll records regarding Castellanos's employment during his time working for Defendants; and

    c.    Failing to provide Castellanos with earnings statements accurately reporting his hours worked;

101.   Defendants' breaches of their employment contract obligations as described in this Count have caused the Farmworkers substantial injuries for which they are entitled to damages available under law and equity.

**COUNT III – Negligent Hiring, Training and Supervision**

102.   Plaintiffs incorporate all allegations above as if set forth herein.

103.   Defendants hire, train and supervise employees to oversee and implement policies in conformity with the Fair Labor Standards Act and H-2A

regulations.

104.   Defendants either failed to train such employees, or otherwise inadequately or improperly supervise such employees to implement duties and obligations under the FLSA and the H-2A Visa Program owed to Farmworkers.

105.   Defendants further failed to supervise such employees to ensure Farmworkers were properly paid and housed.

106.   Defendants' agents or employees were unfit or ill prepared to perform their duties owed to Farmworkers, and Defendants knew or should have known such employees were unfit, or ill prepare, to perform the work for which they were hired, trained, supervised and retained for.

107.   As a direct and proximate result of Defendants' negligent hiring, training, supervision and retention of its employees, Plaintiffs sustained damages.

## VI.   PRAYER FOR RELIEF

WHEREFORE, the Farmworkers request that this Court enter an order:

1.   Granting judgment in favor of the Farmworkers and against Defendants, jointly and severally, on their Fair Labor Standards Act claims set forth in Count I and awarding each of the Farmworkers his unpaid minimum wages and an equal amount in liquidated damages;

2.   Granting judgment in favor of the Farmworkers and against

Defendants, jointly and severally, on the breach of contract claims set forth in Count II, and awarding each of the Farmworkers his actual and compensatory damages;

3.      For all general and special damages due to Defendants' negligence;

4.      For pre-judgment and post-judgment interest as allowed by law;

5.      Awarding the Farmworkers the costs of this litigation and attorney's fees; and

6.      Granting such other relief as this Court deems just and appropriate.

Dated this 19th day of November, 2021.

By:  /s/ Hannah Stone
          Hannah Stone

MILODRAGOVICH, DALE
& STEINBRENNER, P.C.

and

/s/ Megan L. Dishong
Megan L. Dishong

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

The Farmworkers demand a trial by jury on each and every claim set forth herein.

DATED this 19th day of November, 2021.

By:  /s/ Hannah Stone
       Hannah Stone

MILODRAGOVICH, DALE
& STEINBRENNER, P.C.

and

/s/ Megan L. Dishong
       Megan L. Dishong

*Attorneys for Plaintiffs*